**BANK OF NEW YORK, Trustee, Appellant–Plaintiff,**

**v.**

**Stephen H. NALLY; Hiram Nally; Eileen Nally; State of Indiana; Marina Limited Partnership, Appellees–Defendants.**

**Tod D. Owens and Pamela E. Owens, Appellees–Third–Party Plaintiffs,**

**v.**

**Stephen N. Nally, Bank of New York Trustee, Shae Wiles, Michael Mize, Internal Revenue Service, et al., Appellees–Third–Party Defendants.**

No. 29A02–0212–CV–1057.

Court of Appeals of Indiana.

July 3, 2003.

Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Doyle & Friedmeyer, P.C., Indianapolis, IN, Attorneys for Appellant Bank of New York, Trustee.

Patrick R. Ragains, Smith & Ragains, Anderson, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

The Bank of New York ("Bank") appeals the grant of summary judgment in favor of Tod D. and Pamela E. Owens (collectively "Owens"). In particular, the Bank argues that its mortgage should have been given priority over the mortgage given to Owens—even though the mortgage to Owens was recorded before the mortgage to the Bank—because the mortgage to Owens was not recorded in the grantor-grantee index. The Bank also argues that it is entitled to protection under the doctrine of equitable subrogation. Because Indiana Code § 36–2–11–12(b) requires the maintenance of separate indexes for mortgages and deeds, we find that in addition to searching the grantor-grantee index, a purchaser is required to search the mortgagor-mortgagee index and is held to constructive notice of those documents recorded in both indexes. In addition, because it was "culpably negligent" by not locating the mortgage to Owens, the Bank is not entitled to the remedy of equitable subrogation, and we affirm.

### Facts and Procedural History

The following material facts are not in dispute. On December 16, 1996, Owens conveyed real property located at 24 Point Lane, Arcadia, Indiana ("real estate") by warranty deed to Stephen H. and Jennifer R. Nally (collectively "Nally"). In exchange, Nally executed a promissory note to Owens for a portion of the purchase price. In particular, the promissory note required Nally to pay Owens $24,490.91 plus 21% annual interest prior to maturity on January 16, 1997, and 24% annual interest after maturity until paid. On the same day, Nally executed a mortgage in favor of Owens ("Owens mortgage") to secure payment of the note and also executed a mortgage for the real estate in favor of Amtrust Financial Services, Inc. ("Amtrust mortgage") for $204,000.00.

On December 26, 1996, Owens recorded the Owens mortgage in Hamilton County, Indiana. Then, on January 21, 1997, Amtrust recorded in Hamilton County the warranty deed conveying the property from Owens to Nally and the Amtrust mortgage. Amtrust had assigned the Amtrust mortgage to Standard Federal Bank pursuant to a corporation assignment of mortgage agreement, which it also recorded on that same day.

Years later, Stephen Nally executed another mortgage on the real estate in favor of Equivantage, Inc. ("Equivantage mortgage") in the amount of $265,500.00. The Equivantage mortgage was recorded in Hamilton County on June 12, 1998, and its funds were used to pay the balance of the Amtrust mortgage, closing costs, multiple creditors, and Stephen Nally. Equivantage later assigned the Equivantage mortgage to the Bank of New York ("Bank"), who recorded the assignment on March 17, 2000, in Hamilton County, Indiana.

Thereafter, Nally stopped making regular mortgage payments, and the Bank filed

a complaint to foreclose its mortgage. Owens filed a motion to intervene, which was granted, and then filed a counterclaim and cross-claim to foreclose the Owens mortgage. The Bank filed a motion for summary judgment, and Owens filed a cross-motion for summary judgment. After a hearing, the trial court granted Owens' motion and denied the Bank's motion. This appeal ensued.

### Discussion and Decision

The Bank appeals the denial of its motion for summary judgment and the grant of summary judgment for Owens. In particular, the Bank argues that it is a bona fide purchaser for value without notice of the Owens mortgage. As such, the Bank argues that its mortgage had priority over the Owens mortgage, even though the Owens mortgage was recorded before its mortgage. In the alternative, the Bank claims protection under the doctrine of equitable subrogation. We address each argument in turn.

When reviewing the grant or denial of summary judgment, this Court applies the same legal standard as the trial court: summary judgment is appropriate where no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Munsell v. Hambright*, 776 N.E.2d 1272, 1278 (Ind. Ct.App.2002), *trans. denied.* The standard of review is not altered by cross motions for summary judgment on the same issues. *Id.* The party appealing the denial of summary judgment carries the burden of persuading this Court that the trial court's decision was erroneous. *Id.*

Moreover, when the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 935 (Ind.Ct.App. 2002), *trans. denied.* If there are no dis-

puted facts and the issue presented is purely a question of law, we review the matter de novo. *Id.* Also, our standard of review is not changed by the trial court's entry of findings of fact and conclusions thereon. *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264 (Ind.Ct.App. 2002), *trans. denied.* Although the findings and conclusions provide valuable insight into the trial court's decision, they are not binding upon this Court. *Id.*

### I. Bona Fide Purchaser for Value Without Notice

▆▆▆ The Bank argues that as a bona fide purchaser for value without notice of the Owens mortgage, the trial court erred when it granted summary judgment for Owens. Indiana's recording statute offers protection to subsequent purchasers, lessees, and mortgagees. *Szakaly v. Smith*, 544 N.E.2d 490, 491 (Ind.1989). It states:

> A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

Ind.Code § 32–21–4–1(b). Generally, where there are two competing mortgages claiming priority in a foreclosure setting, application of the recording statute would resolve the dispute. However, where a purchaser claims status as a bona fide purchaser for value without notice, they may seek equitable protection from application of the recording statute.

▆▆▆ Here, the Bank asserted status as a bona fide purchaser for value, and it claimed to have had no notice of the Owens mortgage. To qualify as a bona fide purchaser, one must purchase in good faith, for valuable consideration, and without no-

tice of the outstanding rights of others. *Keybank Nat'l Ass'n v. NBD Bank,* 699 N.E.2d 322, 327 (Ind.Ct.App.1998). "The theory behind the bona fide purchaser defense is that every reasonable effort should be made to protect a purchaser of legal title for a valuable consideration without notice of a legal defect." *Id.* The parties do not dispute that the Bank is a purchaser for value; instead, they focus their arguments on whether the Bank had notice of the Owens mortgage.

 The law recognizes two forms of notice: constructive and actual. *Id.* Constructive notice is provided where a deed or mortgage is properly acknowledged and placed on the record as required by statute. *Id.* Notice is actual if notice has been directly and personally given to the person to be notified. *Id.*

Given the dearth of cases in Indiana regarding when a subsequent purchaser is held to have constructive notice, the Bank directs our attention to *Landis v. Miles Homes Incorporated of Illinois,* 1 Ill. App.3d 331, 273 N.E.2d 153 (1971). Based on *Landis,* the Bank argues that we should adopt a rule that holds a subsequent purchaser to constructive notice of documents only found in the grantor-grantee index.[1] In that case, the court held that under Illinois law, the "purchaser of real estate ... is chargeable with knowledge of what appears in the grantor-grantee index, the legal record required to be maintained by the Recorder (Ill.Rev. Stat.1969, ch. 115, par. 12); he is not chargeable with notice of that which appears in other records which may be kept as a convenience, such as a tract index." *Id.* at 155.

Yet the situation presented by our case differs significantly. In *Landis,* the controlling Illinois statute defined what knowledge with which a subsequent purchaser is charged. Specifically, the statute charged a subsequent purchaser with knowledge of those records appearing in the grantor-grantee index only. In contrast, Indiana has no such statute defining which indexes one must search or else risk being held to have constructive knowledge thereof. In addition, Indiana Code § 36–2–11–12(b) requires county recorders to maintain a grantor-grantee index and a separate index for mortgagors-mortgagees.[2] Even though a record may be considered outside the chain of title because it is not situated in the grantor-grantee index, if the record is located in the mortgagor-mortgagee index, we find that the subsequent purchaser is held to constructive notice of it. Thus, because Indiana Code § 36–2–11–12(b) requires the maintenance of separate mortgage and deed indexes, we hold that in addition to searching the grantor-grantee index, a purchaser is required to search the mortgagor-mortgagee index and is held to constructive notice of

1. During a title search, a prospective purchaser assesses the marketability of title to a tract of land by determining the "chain of title." *Szakaly,* 544 N.E.2d at 491. Beginning with the person who received the grant of land from the United States government, the purchaser traces the name of the grantor until the conveyance of the tract in question. *Id.* "As the process is repeated, the links in the chain of title are forged." *Id.* at 491–92.

2. Indiana Code § 36–2–11–12(b) states:

The recorder shall accurately maintain separate indexes of all the records of:
 (1) deeds for real estate; and
 (2) mortgages on real estate;
in the recorder's office. The recorder shall index each deed or mortgage alphabetically, by the name of each grantor and grantee or mortgagor and mortgagee, and shall include in each index entry a concise description of the real property, the date of the deed or mortgage, and the number or letter of the book and the page at which each deed or mortgage is recorded.

those documents recorded in both indexes.[3]

In this case, the Owens mortgage was not located in the grantor-grantee index because the warranty deed conveying the property from Owens to Nally was recorded after the Owens mortgage had been recorded. Thus, until the Hamilton County recorder's office received the warranty deed, Nally was not the record title owner and there was no place to put the Owens mortgage granted by Nally in the grantor-grantee index. Nevertheless, the Owens mortgage was located in the mortgagor-mortgagee index and was still there well before the Bank accepted assignment of the Equivantage mortgage. Had the Bank searched the mortgagor-mortgagee index, it would have located the Owens mortgage.

The Bank also argues that Indiana law suggests that subsequent purchasers will be held to constructive notice of documents only found in the grantor-grantee index. We disagree. In support of this argument, the Bank first cites to *Hartig v. Stratman*, 729 N.E.2d 237 (Ind.Ct.App. 2000), *reh'g denied, trans. denied*. In *Hartig*, Connell, a property owner, gave his neighbors an easement on his land for a shared driveway and then sold the property to Holmes. Holmes then sold the property to Hartig, who had no actual knowledge of the easement and recorded the deed from Holmes. One minute after Hartig recorded his deed, the neighbors recorded the easement that Connell had conveyed to them. This Court determined that Hartig was not deemed to have constructive knowledge of the neighbor's easement. *Id.* at 240. In particular, we held that because Hartig would not have discovered the easement recorded one minute after his deed was recorded, the easement

was recorded outside the chain of title. *Id.* at 240–41. However, the case at bar differs significantly from *Hartig*. First, *Hartig* did not involve a mortgage, which is required to be kept in a separate index. Because this case deals with a mortgage, the Bank would have been able to locate it efficiently. Furthermore, the easement in *Hartig* was not recorded until *after* Hartig had purchased the property and recorded his deed; thus, he would not have been able to locate it or be held to constructive notice of it. Here, on the other hand, the Owens mortgage had been recorded well *before* the Bank accepted assignment of the Equivantage mortgage, so the Bank could have discovered the Owens mortgage. Therefore, we find *Hartig* inapposite.

The Bank also cites to *Keybank National Association v. NBD Bank*, 699 N.E.2d 322 (Ind.Ct.App.1998) in support of the proposition that "mortgages recorded outside the chain of title do not operate as constructive notice to subsequent purchasers or mortgagees." Appellant's Br. p. 7. In *Keybank*, the Loudermilks purchased real estate and recorded their deed. They gave a mortgage to NBD, who recorded the mortgage under an incorrect address. Thus, the NBD mortgage was filed against another existing property not owned by the Loudermilks. Eventually, the Loudermilks' son came to own their real estate. He executed a mortgage in favor of Keybank, who recorded the mortgage against the Loudermilk real estate. After the son filed for bankruptcy protection, Keybank sought foreclosure of its mortgage. NBD sought priority over the Keybank mortgage and argued that Keybank should be held to constructive notice of NBD's mortgage because it was first recorded. None-

---

3. We note that many counties now have begun putting all records into a computer database that can be searched by a party's name, thereby combining both the grantor-grantee index with the mortgagor-mortgagee index for convenience of searching.

theless, we held that because Keybank could not have known of the NBD mortgage—as it was recorded against a different tract of land than that owned by the Loudermilks—Keybank could not be deemed to have constructive notice of the NBD mortgage. *Id.* at 327–28. Here, though, the Bank could have located the Owens mortgage. In addition, there is no evidence that a recording mistake, similar to the one from *Keybank*, occurred in this case.[4] Thus, we presume that the Owens mortgage properly found its way into the mortgage index, where the Bank could have found it. Thus, *Keybank* is distinguishable.

In conclusion, we find that the Bank is held to constructive notice of the Owens mortgage and is not a bona fide purchaser for value without notice. Because the recording statute gives priority to mortgages by the order in which they are recorded and because the Owens mortgage was recorded first, it was entitled to priority.

### II. Equitable Subrogation

■■■■ The Bank also claims that it is entitled to relief under the doctrine of equitable subrogation. Equitable subrogation is applicable where a party, not acting as a mere volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable. *Osterman v. Baber*, 714 N.E.2d 735, 737 (Ind.Ct.App.1999), *trans. denied.* It is a highly favored doctrine that is to be given a liberal application. *Id.* at 738. While ordinary negligence will not bar the application of equitable subrogation, the remedy will not be allowed if the party is guilty of culpable negligence. *Id.* There are no degrees of negligence under Indiana common law. *Wilshire Servicing Corp. v.*

*Timber Ridge P'ship*, 743 N.E.2d 1173, 1178 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Thus, it is difficult to place the term "culpable negligence" in a proper frame of reference. *Id.* However, culpable negligence requires more than mere inadvertence, mistake, or ignorance. *Id.*

■■■■ Application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. *Id.* at 1179. Under these circumstances, we find that the Bank is guilty of culpable negligence and thus not entitled to the remedy of equitable subrogation. One factor in determining whether the doctrine applies is "whether the party requesting equitable relief engages in commercial transactions for consideration." *Id.* Another factor is whether a title insurer had an opportunity to review the title and discover the recorded lien. *Id.* In this case, the facts work against the Bank. As a mortgage lender, the Bank is a sophisticated party with experience in lending practices. In addition, the settlement statement of the Equivantage mortgage, later assigned to the Bank, shows that title insurance was purchased in the amount of $266,000.00. Hence, Equivantage could have discovered the Owens mortgage had it searched the mortgagor-mortgagee index. In addition, the Bank could have performed its own title search before accepting assignment of the Equivantage mortgage in order to protect its own interests. Again, such a search would have turned up the Owens mortgage had it included inspection of the required mortgagor-mortgagee index. Because the Bank could have discovered the Owens mortgage, it was culpably negligent and

---

4. Owens presented evidence of four different title searches where the Owens mortgage was uncovered, at least two of which were completed before the Bank was assigned the Equi-

vantage mortgage. There is no evidence that the Bank ever performed a title search or, in the alternative, that its search failed to uncover the Owens mortgage.

not entitled to the protection of the doctrine of equitable subrogation.

Judgment affirmed.

FRIEDLANDER and ROBB, JJ., concur.